# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| MATTHEW ANDREWS & MIKE PRESTON, individually and on behalf of all others similarly situated, | § § § § | **Docket No. 14-cv-1308** |
| Plaintiffs, | § | JURY TRIAL DEMANDED |
| v. | § § | |
| | § | CLASS & COLLECTIVE ACTION |
| PACIFIC PROCESS SYSTEMS, INC. | § § | |
| Defendant. | § | JUDGE CYNTHIA REED EDDY |

## FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Matthew Andrews ("Andrews") and Mike Preston ("Preston") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class and collective action against Pacific Process Systems, Inc. ("PPS" or "Defendant") to recover unpaid overtime wages and other damages owed under the California Labor Code ("CLC"), California Business & Professions Code ("CBPC"), Pennsylvania Minimum Wage Act ("PMWA"), and Fair Labor Standards Act ("FLSA").

2. Plaintiffs and the other workers like them typically worked in excess of 84 hours a week, but PPS did not pay them overtime. Instead, PPS paid these workers a daily rate with a per diem. This class and collective action seeks to recover the unpaid overtime and other damages owed to these workers.

### JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

5. Andrews and other similarly situated workers reside in and/or worked in the Western District of Pennsylvania, Pittsburgh Division, during the statutory time period.

6. Defendant conducts substantial business operations within the Western District of Pennsylvania, Pittsburgh Division.

## PARTIES

7. Andrews worked for PPS as a Well Tester/Flowback Hand during the relevant statutory time period.

8. Preston worked for PPS as a Well Tester/Flowback Hand in California and Pennsylvania during the relevant statutory time period.

9. Throughout his employment with PPS, Andrews was paid a day-rate with a per diem even though he regularly worked in excess of forty (40) hours each week.

10. Andrews is a resident of Washington, Pennsylvania, located within the Western District of Pennsylvania, Pittsburgh Division.

11. Andrews' consent to be a party plaintiff is on file with the Court.

12. Throughout his employment with PPS, Preston was paid a day-rate with a per diem even though he regularly worked in excess of forty (40) hours each week.

13. Preston is a resident of the Western District of Pennsylvania, Pittsburgh Division.

14. Preston's consent to be a party plaintiff is on file with the Court.

15. Plaintiffs bring this action on behalf of themselves and all other similarly situated workers who were improperly paid a day-rate with a per diem without overtime compensation for hours that they worked in excess of forty (40) hours in a workweek.

16. The class of similarly situated employees ("Putative Class Members") consists of:

> **All current and former employees of Pacific Process Systems, Inc. employed during the past three (3) years (or four [4] years**

2

**with respect to those working in California) who received a day-rate without overtime compensation.**

17. Many Putative Class Members work in Pennsylvania, but many also work elsewhere, such as in California and Texas. As such, this is a companywide collective action.

18. PPS is a California Corporation with offices in Washington, Pennsylvania, and conducting business within the Western District of Pennsylvania, Pittsburgh Division. PPS has answered herein.

## COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

22. At all times hereinafter mentioned, Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

23. PPS is an oilfield services company proving well related services to oil companies and operators.

3

24. PPS maintains significant operations throughout Pennsylvania and the rest of the United States, including California. *See generally* http://www.pps-equipment.com/

25. Andrews and the Putative Class Members worked for PPS as Well Testers/Flowback Hands, Flowback Operators, and other positions paid on a day-rate.

26. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

27. For example, Andrews was employed by PPS as a Well Tester/Flowback Hand during the statutory time period and was paid on a day-rate basis.

28. In this regard, his primary job duties included performing daily checklists, assisting with the preparation of equipment, and preforming well testing related functions on various job sites.

29. PPS typically required Andrews to work at least 84 hours a week.

30. Similarly, Preston was employed by PPS as a Well Tester/Flowback Hand during the statutory time period and was paid on a day-rate basis.

31. In this regard, Preston's primary job duties included performing daily checklists, assisting with the preparation of equipment, and preforming well testing related functions on various job sites.

32. PPS typically required Preston to work at least 84 hours a week including, but not limited to, when Preston worked in California.

33. Preston typically worked at least 12 hours a day.

34. Preston did not receive meal and/or rest breaks as required by California law.

35. The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by PPS and/or the operator PPS contracted with.

36. Virtually every job function was pre-determined by PPS and/or the operator PPS contracted with, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

37. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

38. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

39. The Putative Class Members did not have any supervisory or management duties.

40. Finally, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

41. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

42. The Putative Class Members were generally scheduled to work eighty-four (84) hours per workweek, but often worked more.

43. Instead of paying them overtime, Defendant paid the Putative Class Members a day-rate and/or salary.

44. Defendant denied the Putative Class Members overtime for any and all hours worked in excess of forty (40) hours in a single workweek.

45. As the controlling law makes clear, the manual labor/technical duties which were performed by the Putative Class Members consist of *non*-exempt work.

46. PPS knew Well Tester/Flowback Hands were entitled to overtime pay.

47. In fact, PPS pays overtime to Well Tester/Flowback Hands employed in certain parts of the country.

48. PPS nonetheless denied Plaintiffs and the Putative Class Members overtime.

49. Therefore, Defendant owes back overtime wages to Plaintiffs and the Putative Class Members, all of whom work long hours each workweek well in excess of forty (40) hours.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

50. Over one hundred (100) employees have been victimized by this pattern, practice, and policy which are in willful violation of the CLC, CBPC, PMWA, and FLSA.

51. Numerous other employees who worked with Plaintiffs have joined this lawsuit, indicating they were paid in the same manner and were not properly compensated for all hours worked as required by state and federal wage laws.

52. Based on their experiences and tenure with PPS, Plaintiffs are aware that the illegal practices or policies of Defendant have been imposed on the Putative Class Members.

53. The Putative Class Members all received a day-rate, regularly worked in excess of eight (8) hours a day, and forty (40) hours per week, and were not paid overtime compensation.

54. These employees are victims of Defendant's unlawful compensation practices and are similarly situated to Plaintiffs in terms of relevant job duties, pay provisions, and employment practices.

55. Defendant's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

56. Plaintiff's experiences are therefore typical of the experiences of the Putative Class Members.

57. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

58. All of the Putative Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of forty (40) hours per week (and, in the case of California, hours worked in excess of eight (8) and/or twelve (12) hours in a day).

59. Plaintiffs have no interests contrary to, or in conflict with, the members of the classes. Like each member of the proposed classes, Plaintiffs have an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

60. A collective/class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

61. Absent this action, many members of Putative Class Members likely will not obtain redress of their injuries and PPS will retain the proceeds of its violations of the FLSA and the applicable state labor laws.

62. Furthermore, even if some of the Putative Class Members could afford individual litigation against PPS, it would be unduly burdensome to the judicial system.

63. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

64. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether PPS employed members of the Putative Class Members within the meaning of the applicable statutes, including the FLSA;

    (b) Whether the Putative Class Members were improperly classified by PPS as exempt from overtime compensation;

(c) Whether PPS's decision to classify the Putative Class Members as exempt was made in good faith;

(d) Whether PPS's violation of the FLSA and/or the various state wage and hour laws was willful;

(e) Whether PPS failed to pay Plaintiffs and the Putative Class Members overtime pay due to them by virtue of their uniform designation as exempt; and

(f) Whether PPS kept adequate records of the hours worked by the Putative Class Members.

65. Plaintiffs' claims are typical of the claims of members of the classes. Plaintiffs, the FLSA Class, and the Putative Class Members, have sustained damages arising out of PPS' wrongful and uniform employment policy.

66. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective or class action.

67. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

## CAUSES OF ACTION

### First Cause of Action: Violation of the FLSA

68. At all relevant times, PPS has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

69. PPS employed Plaintiffs and each member of the FLSA Class.

70. During the limitations period, PPS had a policy and practice of refusing to pay the Putative Class Members overtime for hours worked in excess of 40 per week.

71. PPS's failure to pay Plaintiffs and the Putative Class Members overtime at rates not less than one and one-half times their regular rates is a violation of 29 U.S.C. § 207.

72. The foregoing conduct constitutes a willful violation of the FLSA. Due to PPS's FLSA violations, Plaintiffs and the members of the FLSA Class are entitled to recover from PPS their unpaid overtime compensation, an equal as liquidated damages, reasonable attorneys' fees, costs, and expenses of this action.

**Second Cause of Action: Failure to Pay Overtime (California)**

73. PPS treated Preston and the Putative Class Members employed in California as exempt from the applicable state and federal overtime laws and denied them overtime wages.

74. PPS suffered or permitted the Putative Class Members employed in California (including Preston) to work more than 8 and/or 12 hour in a day, and/or 40 hours in a week, in California, without paying them overtime as required by the California Labor Code.

75. By failing to pay overtime to Preston and the Putative Class Members employed in California, PPS violated the California Labor Code and the provisions of the applicable I.W.C. Wage Order, which require overtime compensation to non-exempt employees.

76. As a result of PPS' unlawful acts, Preston and the Putative Class Members employed in California have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, attorneys' fees, and costs, under Labor Code § 1194.

**Second Cause of Action: Failure to Provide Meal & Rest Breaks**

77. PPS employed Preston and the Putative Class Members employed in California for work periods of more than 5 hours per day.

78. PPS had an affirmative obligation to ensure that employees were actually relieved of all duty in order to take uninterrupted 30 minute meal periods in the first five hours of work each day.

9

79. PPS regularly violated its obligations to provide meal periods, with the result that Preston and the Putative Class Members employed in California were not provided the legally required meal periods.

80. Nor did PPS provide Preston or those similarly situated to him with the rest breaks required by California law.

81. Preston and the Putative Class Members employed in California routinely worked more than 5 hours in row without being provided any rest break whatsoever.

82. Therefore, Preston and the Putative Class Members employed in California are entitled to be paid one hour of pay for each day they were not provided with the required meal and/or rest periods.

### Third Cause of Action—Failure to Pay Final Wages

83. California Labor Code § 201 requires an employer who discharges an employee to pay all unpaid wages owed to that employee immediately.

84. California Labor Code § 202 requires an employer to pay all wages owed to an employee within 72 hours of that employee's resignation.

85. Under California Labor Code § 203, an employer willfully failing to pay all wages due upon separation from employment is liable for continued wages for each day payment in full is not made, up to 30 days.

86. Under California Labor Code § 204, an employer must pay all wages earned by any person in any employment at least twice during each calendar month, on days designated in advance by the employer as the regular paydays.

87. PPS willfully failed to timely pay wages, including overtime, owed to Preston and to certain members of the Putative Class Members employed in California during and after their employment terminated.

88. Preston still has not been paid all wages.

89. As a result, PPS are liable to Preston and other members of the Putative Class Members employed in California under California Labor Code Sections 201-204, for the penalties under California Labor Code Section 210, and for 30 days additional wages.

**Fourth Cause of Action—Violations of California UCL (California Class)**

90. California Business & Professions Code § 17200, known as the Unfair Competition Law (UCL), prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

91. Section 17204 permits "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the UCL.

92. For at least four years preceding the filing of the original complaint in this matter, PPS engaged in unlawful, unfair and/or fraudulent business acts and practices as defined by § 17200 by engaging in the acts alleged in this Complaint.

93. For example and not by way of limitation, PPS failed to pay overtime for all hours worked in excess of 8 and 12 hours a day, and/or 40 hours in a week for work, performed in California.

94. This failure to pay overtime violated both federal and California state law.

95. The violations of law, including the FLSA and the California Labor Code, described herein serve as predicate acts and practices for the purposes of UCL § 17200.

96. As a direct and proximate result of PPS' unlawful, unfair, and/or fraudulent acts and practices described herein, it received and continues to hold ill-gotten gains belonging to Preston and the Class Members.

97. PPS profited from its unlawful, unfair, and/or fraudulent acts and practices in the amount of those unpaid overtime compensation and interest accrued by Preston and those similarly situated to him.

98. Preston and the Putative Class Members employed in California are entitled to restitution pursuant to UCL §§ 17203 and 17208 for all unpaid overtime compensation and interest since four years from the filing of this action.

99. Preston and the Putative Class Members employed in California are entitled to enforce all applicable penalty provisions of the California Labor Code pursuant to UCL § 17202.

100. Preston' success in this action will enforce important rights affecting the public interest.

101. In this regard, Preston sues on behalf of the public as well as on behalf of herself and others similarly situated. Preston seeks and is entitled to the unpaid compensation, declaratory, and any other appropriate remedy.

102. In order to prevent PPS from profiting and benefiting from wrongful and illegal acts and continuing those acts, an order requiring PPS to disgorge all the profits and gains reaped and restore such profits and gains to its workers, from whom they were unlawfully taken.

103. Preston has assumed the responsibility of enforcement of the laws and lawful claims specified herein. There is a financial burden incurred in pursuing this action that is in the public interest. Therefore, attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5.

104. PPS's acts described herein constitute unlawful business acts and practices in violation of the UCL, entitling Preston and the Putative Class Members employed in California to recover their back wages, interest and costs.

**Fifth Cause of Action: Violation of Pennsylvania Laws**

105. The conduct alleged violates the Pennsylvania Minimum Wage Act (PMWA) (43 Pa. Stat. Ann. § 333.104).

106. At all relevant times, PPS was subject to the requirements of the PMWA.

107. At all relevant times, PPS employed Andrews, and each member of the Pennsylvania Class, as an "employee" within the meaning of the PMWA.

108. The PMWA require an employer like PPS to pay employees at one and one-half times the regular rate of pay for hours worked in excess of 40 hours in any one week. Andrews and the members of the Pennsylvania Class were entitled to overtime pay under the PMWA.

109. But PPS had a policy and practice of failing to pay overtime to Andrews and the other members of the Pennsylvania Class for hours worked in excess of 40 hours per workweek.

110. Andrews and the Pennsylvania Class seek unpaid overtime in amount equal to one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

111. Andrews and the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by PPS, as provided by the PMWA.

**JURY DEMAND**

112. Plaintiffs demand a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray for judgment against PPS as follows:

    a. For an Order certifying class action(s) under Rule 23 for the purposes of the claims under California and Pennsylvania law;

b. For an Order certifying this case as a collective action for the purposes of the FLSA claims;

c. For an Order finding PPS liable for violations of state and federal wage laws with respect to Plaintiffs and all Putative Class Members covered by this case;

d. For a Judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Plaintiffs and all Putative Class Members covered by this case;

e. For a Judgment awarding Plaintiffs and all Putative Class Members covered by this case their costs of this action;

f. For a Judgment awarding Plaintiffs and all Putative Class Members covered by this case their attorneys' fees;

g. For a Judgment awarding Plaintiff (and those who have joined in the suit) pre- and post-judgment interest at the highest rates allowed by law;

h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Andrew W. Dunlap*
Michael A. Josephson
Pennsylvania Bar No. 308410
Fed. Id. 27157
Texas Bar No. 24014780
(*Pending Pro Hac Vice*)
Andrew Dunlap
Fed Id. 1093163
Texas Bar No. 24078444
(*Pending Pro Hac Vice*)
Lindsay R. Itkin
Fed Id. 1458866
Texas Bar No. 24068647
(*Pending Pro Hac Vice*)
**FIBICH, LEEBRON, COPELAND BRIGGS & JOSEPHSON**
1150 Bissonnet St.
Houston, Texas 77005
Tel: (713) 751-0025
Fax: (713) 751-0030
mjosephson@fibichlaw.com
adunlap@fibichlaw.com
litkin@fibichlaw.com

AND

Joshua P. Geist
PA. I.D. No. 85745
Goodrich & Geist, P.C.
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
Fed. Id. 21615
(*Pending Pro Hac Vice*)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone

713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**